UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| JOSE A. JARA, | No. C 11-00419 LB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| AURORA LOAN SERVICES, LLC, et al. | [Re: ECF Nos. 50, 51] |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Jose Jara sued Defendants Aurora Loan Services, LLC ("Aurora"), Mortgage Electronic Registration Systems ("MERS"), and California Western Reconveyance ("Cal Western") (collectively, "Defendants") for violation of federal and state law in connection with the foreclosure and sale of his property in South San Francisco, California. Third Amended Complaint ("TAC"), ECF No. 49.[1]

Before the court are Defendants' two motions to dismiss Mr. Jara's Third Amended Complaint. Motion (Aurora and MERS), ECF No. 50; Joinder and Motion (Cal Western), ECF No. 51. The court previously found, pursuant to Civil Local Rule 7-1(b), that these matters are suitable for determination without oral argument and vacated the December 15, 2011 hearing. 12/13/2011 Order, ECF No. 67. For the reasons explained below, the court GRANTS Defendants' motions.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

## II. BACKGROUND

**A.** <u>**Mr. Jara's Allegations**</u>

On January 18, 2006, Mr. Jara purchased property at 330 Arbor Drive in South San Francisco, California. TAC, ECF No. 49 at ¶¶ 1, 5; Request for Judicial Notice ("RJN"), ECF No. 62, Ex. 3. To fund the purchase, he borrowed $865,000 from Pacific Community Mortgage, Inc. ("Pacific"), which packaged the loan as two separate notes. TAC, ECF No. 49 at ¶¶ 5, 6; RJN, ECF No. 62, Exs. 1, 2.[2] Pacific subsequently transferred its servicing rights on the loans to Aurora. TAC, ECF

---

[2] Aurora and MERS ask that the court take judicial notice of the following documents: (1) an adjustable rate note for $648,750 dated January 10, 2006; (2) a note for $216,250 dated January 10, 2006; (3) a deed of trust that was recorded in the San Mateo County Official Records on January 18, 2006; (4) a notice of the transfer of servicing rights from Pacific Community Mortgage, Inc. to Aurora dated January 30, 2006; (5) a mortgage broker fee disclosure dated November 26, 2011; (6) a repayment agreement between Aurora and Mr. Jara dated April 3, 2011; (7) a special forbearance agreement between Mr. Jara and Aurora dated May 8, 2009; (8) a Home Affordable Modification Trial Period Plan effective August 17, 2009; (9) a substitution of trustee that was recorded in the San Mateo County Official Records on November 4, 2008; (10) a notice of default that was recorded in the San Mateo County Official Records on September 25, 2008; (11) a corporate assignment of deed of trust that was recorded in the San Mateo County Official Records on November 10, 2008; (12) a notice of trustee's sale that was recorded in the San Mateo County Official Records on February 4, 2010; (13) a trustee's deed upon sale that was recorded in the San Mateo County Official Records on September 7, 2010; (14) a federal stock charter for Lehman Brothers Bank, FSB that was executed by the Office of Thrift Supervision ("OTS"), an OTS order approving Lehman Brothers Bank, FSB's application to establish certain operating subsidiaries, and a secretary's certificate identifying Aurora Loan Services LLC as a subsidiary of Lehman Brothers Bank, FSB; and (15) a secretary's certificate certifying that Lehman Brothers Bank, FSB changed its name to Aurora Bank FSB on April 24, 2009. RJN, ECF No. 62, Exs. 1-15.

The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because Exhibits 3, 9, 10, 11, 12, and 13 are public records, the court may properly take judicial notice of the undisputable facts contained in them. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011). The other documents (Exs. 1, 2, 4, 5, 6, 7, 8, 14, and 15), however, are not public records. Even so, the court may also consider documents whose authenticity is not challenged and upon which a plaintiff's complaint depends, without converting a motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). Here, because Mr. Jara's complaint relies upon Exhibits 1, 2, 4, 5, 6, 7, and 8, and because he has not challenged their authenticity, the court will take judicial notice of them. His complaint does not, however, rely upon Exhibits 14 and 15 (it is Aurora and MERS's motion to dismiss that does so), so

No. 49 at ¶¶ 2, 5, 20; RJN, ECF No. 62, Ex. 4.

In 2008, Mr. Jara "sustained substantial personal problems that qualified as a hardship under the [Home Affordable Modification Program] requiring modification of the terms of the subject obligation and security instruments." TAC, ECF No. 49 at ¶ 8; *see also* RJN, ECF No. 62, Ex. 10 (notice of default). Thereafter, Mr. Jara entered into agreements to modify the terms of his loan, which he accepted. TAC, ECF No. 49 at ¶ 15.[3] Mr. Jara alleges that he was current on his obligations under the plan when Cal Western recorded a notice of default on the property. TAC, ECF No. 49 at ¶ 12; RJN, Ex. 10 (notice of default). He further alleges that Defendants did not attempt to contact him prior to recording the notice of default and Cal Western did not provide him with a debt validation notice prior to recording the default. TAC, ECF No. 49 at ¶¶ 9, 10, 16.

On August 25, 2010, Cal Western conducted a trustee's sale at which Aurora purchased the property. RJN, ECF No. 62, Ex. 13 (trustee's deed upon sale).

**B. Procedural History**

Mr. Jara filed the present lawsuit against Defendants in San Mateo County Superior Court on November 10, 2010. Notice of Removal, ECF No. 1, Ex. 1 at 5-36 ("Complaint"). Thirteen days later, on November 23, 2010, he filed a First Amended Complaint as a matter of right. Notice of Removal, ECF No. 1, Ex. 2 at 40-49 ("FAC"). The First Amended Complaint added attorneys' fees and costs to the relief previously sought in the original complaint. *Compare* Notice of Removal, ECF No. 1, Ex. 1 at 13 *with* Notice of Removal, ECF No. 1, Ex. 2 at 48. On January 28, 2011, Aurora and MERS removed the case to this court. Notice of Removal, ECF No. 1 at 1-4. The court denied Mr. Jara's motion to remand on June 6, 2011. 6/6/11 Order, ECF No. 30.

Defendants filed motions to dismiss the First Amended Complaint on June 28, 2011. Motion to

---

the court will not take judicial notice of those documents.

[3] The court notes that Aurora and MERS say that there was no permanent modification of Mr. Jara's loan. Rather, they say that Mr. Jara entered into several repayment or "workout" agreements with Aurora, the first of which expressly provided that "nothing contained herein shall constitute a waiver of any or all of the Lender's rights or remedies including the right to commence/continue collection proceedings, including but not limited to a foreclosure action." Motion, ECF No. 50 at 14; *see also* RJN, ECF No. 62, Exs. 6-8.

UNITED STATES DISTRICT COURT
For the Northern District of California

Dismiss (Aurora and MERS), ECF No. 33; Joinder and Motion (Cal Western), ECF No. 34. Mr. Jara did not file an opposition to either motion. Instead, on August 16, 2011, he filed a Second Amended Complaint (titled as a "First Amended Complaint in Federal Court"), which the court struck from the record because he had neither Defendants' consent nor the court's permission to file it. SAC, ECF No. 41; Order Striking Second Amended Complaint, ECF No. 43. The court's order did, though, allow Mr. Jara to file a motion for leave to file another amended complaint, and he did so on August 29, 2011. Order Striking Second Amended Complaint, ECF No. 43 at 3; Motion for Permission to File Amended Complaint, ECF No. 44. On September 30, 2011, the court granted Mr. Jara's motion for leave to file another amended complaint. 9/30/2011 Order, ECF No. 48. Mr. Jara then timely filed his Third Amended Complaint, which, as of now, is the operative complaint in this action. TAC, ECF No. 49.

Defendants now move to dismiss Mr. Jara's Third Amended Complaint. Motion (Aurora and MERS), ECF No. 50; Joinder and Motion (Cal Western), ECF No. 51. Mr. Jara opposes their motions. Aurora and MERS, but not Cal Western, filed a reply brief. Reply, ECF No. 64.

### III. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**IV. DISCUSSION**

Mr. Jara's complaint contains six enumerated claims, but upon further review, it actually contains ten. His federal claims, and then his state claims, are addressed below.

A.  FDCPA

In his first claim, Mr. Jara alleges that Cal Western violated the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, when it "recorded a notice of default against the subject property without providing [him] the Debt Validation Notice required" by the statute and "demanded more money from [him] [than] was required by him by the modified note." TAC, ECF No. 49 at ¶ 16; *see id*. ¶¶ 13-18.[4] Although he does not specify it, this allegation suggests a violation of 15 U.S.C. § 1692g(a), which provides that within five days of making initial contact with a debtor "in connection with the collection of any debt," a debt collector must send the debtor a written notice containing the amount of the debt, the name of the creditor, the time period in which the validity of the debt may be challenged, and instructions explaining how the debtor may obtain further evidence

---

[4] Mr. Jara's Third Amended Complaint alleges that only Cal Western violated the FDCPA. *See* TAC, ECF No. 49 at ¶¶ 13-18. Nevertheless, he stated in his opposition that "Aurora was engaged in 'debt collection' when it communicated with [him] about how to cure his default on the loan when it sent [him] the forebearance [sic]/workout agreement." Opposition, ECF No. 58 at 9. Statements in a brief are not allegations in a complaint, so the court need not address Mr. Jara's possible FDCPA "claim" against Aurora.

of the debt and information about the creditor.

To state a claim under the FDCPA, "a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Adesokan v. U.S. Bank, N.A.,* No. 11-cv-01236-LJO-SKO, 2011 WL 5341178, at *4 (E.D. Cal. Oct. 31, 2011) (citing *Frazier v. Absolute Collection Serv., Inc.,* 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011)).

Cal Western challenges Mr. Jara's claim on two grounds: (1) Cal Western is not a "debt collector" under the FDCPA; and (2) a non-judicial foreclosure does not qualify as a debt collection under the FDCPA.

First, Cal Western argues that Mr. Jara has not sufficiently alleged that it is a "debt collector" under the statute. The court agrees. A "debt collector" is defined, in relevant part, as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).[5] In his Third Amended Complaint, Mr. Jara simply alleges that Cal Western "was retained as" and "was acting as" a debt collector within meaning of the FDCPA. TAC, ECF No. 49 at ¶ 14. He does not allege other facts, for example, to show that Cal Western used any

---

[5] Mr. Jara does, however, allege that "Cal Western was retained as a debt collector by Aurora *after the subject loan went into default*." TAC, ECF No. 49 at ¶ 14 (emphasis added). This allegation distinguishes this case from "numerous decisions among this circuit's district courts, which have held that 'the FDCPA does not apply to non-judicial foreclosure proceedings since a debt collector for the purposes of the Act does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned*.'" *Allen v. United Financial Mortgage Corp.*, No. 09-2507 SC, 2010 WL 1135787, at *6 n.7 (N.D. Cal. Mar. 22, 2010) (quoting *Suetos v. Bank of Am. Nat'l Ass'n.*, No. 09-727, 2010 U.S. Dist. LEXIS 20538, at *11-12 (E.D. Cal. Mar. 8, 2010) (collecting cases)) (emphasis added); *see* 15 U.S.C. § 1692a(6)(f)(iii).

instrumentality of interstate commerce or the mails or that it regularly collects or attempts to debts owed to others. *See* TAC, ECF No. 49 at ¶¶ 13-18. Without more, his allegation that Cal Western is a debt collector is insufficient.

Second, Cal Western argues that a non-judicial foreclosure does not qualify as a debt collection activity under any provision of the FDCPA. The Ninth Circuit has yet to determine if foreclosure proceedings constitute "debt collection" within the ambit of the FDCPA, but most district courts within the circuit have found that they are not. *See, e.g., Garfinkle v. JPMorgan Chase Bank*, No. C 11–01636 CW, 2011 WL 3157157, *3 (N.D. Cal. July 26, 2011) (collecting cases). These courts most often rely on the reasoning found in *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002). There, the plaintiffs challenged their creditor's right to foreclose on the trust deed because of an alleged violation of the FDCPA. *Hulse*, 195 F. Supp. 2d at 1203. The court characterized the plaintiffs' FDPA claim as one for violation of 15 U.S.C. § 1692f(1), which prohibits as an unfair practice the collection of any amount unless expressly authorized by agreement or permitted by law. *Id*. The court rejected the plaintiffs' claim, however, because "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Id*. at 1204. The court explained that:

> A "debt collector" under the FDCPA is a person who collects or attempts to collect debts. 15 U.S.C. § 1692a(6). A "debt" is defined in the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).
>
> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

*Id*. Thus, the plaintiffs could not maintain a claim under the FDCPA "based on alleged actions made in pursuit of the actual foreclosure." *Id*.

*Hulse*'s reasoning, however, is not without its critics. In examining the same question, the Fourth Circuit, for instance, explicitly disagreed with *Hulse* and instead concluded that a plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings commenced" and the actions

C 11-00419 LB
7

"surrounding the foreclosure proceedings were attempts to collect that debt." *Wilson v. Draper & Goldberg PLLC*, 443 F.3d 373, 376-77 (4th Cir. 2006). Some district courts have found the Fourth Circuit's reasoning more persuasive. *See Harvey G. Ottovich Revocable Living Trust dated May 12, 2006 v. Washington Mutual, Inc.*, No. C 10-02842 WHA, 2010 WL 3769459, at *4 (N.D. Cal. Sep. 22, 2010) (noting that "*Hulse* has been found to be overly broad in the categorical exclusions it provided under federal law to lenders" and denying defendants' motion to dismiss plaintiffs' FDCPA claim); *Carter v. Deutsche Bank Nat. Trust Co.*, No. C09-3033 BZ, 2010 WL 1875718, at *1-2 (N.D. Cal. May 7, 2010) (discussing split in authority and declining to dismiss plaintiff's FDCPA claim at the pleading stage); *Allen v. United Fin. Mortg. Servs.*, No. 09-2507 SC, 2010 WL 1135787, at *6 (N.D. Cal. Mar. 22, 2010) (following *Wilson* at the pleading stage in light of the parties' scant briefing on the topic but stating that it may revisit the applicability of the FDCPA at a later time). In many of these cases, though, the plaintiffs' alleged violative conduct was more than just non-judicial foreclosure acts. *See Wilson*, 443 F.3d at 376-77 (defendant allegedly made a specific request for money to reinstate the plaintiffs' account after foreclosure proceedings began); *Harvey G. Ottovich*, 2010 WL 3769459, at *4 (plaintiffs also alleged that defendants repeatedly obfuscated the truth with regard to the loan amounts and payments).

Still other courts have found that acts taken in furtherance of a foreclosure proceeding can be the basis of a FDCPA claim, but only if they are alleged as violations of 15 U.S.C. § 1692f(6). The analysis by the district court in *Armacost v. HSBC Bank USA*, No. 10-CV0274-EJL-LMB, 2011 WL 825151 (D. Idaho Feb. 9, 2011) is instructive. There, the plaintiff generally alleged violations of 15 U.S.C. § 1692f and argued that the defendant did not have standing to foreclose on the deed of trust. *Id*. at *3. The court first noted that the definition of "debt collection" found in 15 U.S.C. § 1692a(6) included the following sentence: "For the purpose of section 1692f(6) of this title, [a debt collector] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id*. at *5. It then explained that 15 U.S.C. § 1692f(6) prohibits a debt collector from "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there

is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." *Id*. at n.5 (quoting 15 U.S.C. § 1692f(6)). But, it stated, "if 'debt collection' generally included the enforcement of a security interest, the language specifying so for the purposes of § 1692f(6) would be surplusage, and such a construction would violate a 'long standing canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous.'" *Id*. (quoting *Beck v. Prupis*, 529 U.S. 494, 506 (2000)) (footnote omitted). The court thus concluded that while "a non-judicial foreclosure action generally does not constitute a 'debt collection activity' under the FDCPA," an exception to this rule existed for claims under 15 U.S.C. § 1692f(6). *Id*. at *6.[6]

The court finds the reasoning of the court in *Armacost* to be most persuasive. Acts required to institute foreclosure proceedings, such as the recording of a notice of default, alone, are not debt collection activities for purposes of the FDCPA unless alleged in relation to a claim for violation of 15 U.S.C. § 1692f(6). And because Mr. Jara's FDCPA claim is one for violation of 15 U.S.C. § 1692g – and not one for violation of 15 U.S.C. § 1692f(6) – and is based only on Cal Western's foreclosure-related acts, it must fail.

Accordingly, Mr. Jara's claim for a violation of 15 U.S.C. § 1692g is dismissed with prejudice.

B. TILA

The Truth in Lending Act aims to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). It "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980)

---

[6] Some courts, including the Fifth Circuit, would not limit the applicability the FDCPA's applicability to debt collectors enforcing a security interest only to claims under 15 U.S.C. § 1692f(6). *See Kaltenback v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2006) (concluding that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for purposes of the entire FDCPA even when enforcing security interests"); *but see Brown v. Morris*, 243 Fed. Appx. 31, 35-36 (5th Cir. 2008) (finding no error with a jury instruction stating that "[o]rdinarily, the mere activity of foreclosing . . . under a deed of trust is not the collection of a debt within the meaning of the [FDCPA] unless other actions are taken beyond those necessary to foreclose under the deed of trust, and were taken in an effort to collect a debt") (brackets in original). The *Kaltenback* court, however, did not address the statutory construction argument described above.

(quoting 15 U.S.C. § 1601). It "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635 & 1638). TILA disclosure requirements, though, do not apply to forbearance or loan modification agreements that simply reduce the interest rate and payment schedule of a loan. *See Norton–Griffiths v. Wells Fargo Home Mortgage*, 2011 WL 61609, at * 5–7 (D. Vt. Jan. 4, 2011).

Mr. Jara simply alleges that Aurora, as "servicer" of the loans, violated TILA because it "refuses to advise [him] of the identity and provide the contact information for the true owner of the obligation and security instrument" and has failed "to provide [him with] and an accounting of how it allocated" his mortgage payments. TAC, ECF No. 49 at ¶¶ 32, 34-35. These allegations are insufficient. For example, Mr. Jara does not specify which provision of TILA that Aurora allegedly violated or when the violation occurred, nor does he state whether he seeks rescission and/or damages (the two remedies for TILA violations, which have different statutes of limitations). In other words, Mr. Jara's factual allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. His claim is dismissed without prejudice.

C. RESPA

RESPA protects home buyers "from unnecessarily high settlement charges by certain abusive practices." 12 U.S.C. § 2601(a). It provides plaintiffs with a private right of action for three types of wrongful acts: "(1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer selected by a seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v. Wells Fargo Bank, N.A.,* No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague v. Wells Fargo Bank, N.A.,* No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)).

Mr. Jara alleges that Aurora, as "servicer" of the loans, violated RESPA for the same reasons it allegedly violated TILA: because it "refuses to advise [him] of the identity and provide the contact

information for the true owner of the obligation and security instrument" and has failed "to provide [him with] and an accounting of how it allocated" Mr. Jara's mortgage payments. TAC, ECF No. 49 at ¶¶ 32, 34-35.[7] Although he does not specify which particular provision(s) of RESPA that Aurora allegedly violated, two RESPA provisions – 12 U.S.C. § 2605(b) and (e)(1)(A) – require a "servicer" of a "federally related mortgage loan" to (1) "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person"; and (2) "provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period" if the servicer "receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan."

Mr. Jara's RESPA claim, like his TILA one, is insufficiently pled. Most notably, he fails to allege that he sent Aurora a "qualified written request."[8] While he does allege that he "has requested this information, to no avail," he does not specify whether his request meets the definition of a "qualified written request." *See* 12 U.S.C. § 2605(e)(1)(B) (defining a "qualified written request" as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that — (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower"). Like his TILA claim, Mr. Jara's factual allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. His claim is dismissed without prejudice.

D. National Housing Act

In the "General Allegations" section of his Third Amended Complaint, Mr. Jara alleges that Aurora (or its agents or assigns) failed to comply with the provisions of the National Housing Act,

---

[7] Despite the court's request in its last order that Mr. Jara set forth violations of separate statutes separately, he combined his TILA and RESPA claims into a single cause of action.

[8] Mr. Jara does not address any of Aurora and MERS' arguments concerning his RESPA claim in his opposition.

C 11-00419 LB
11

12 U.S.C. § 1715(u). TAC, ECF No. 49 at ¶ 11. But as the court explained in its order granting his motion for leave to file an amended complaint, he does not have a private right to action for such a claim. 9/30/2011 Order, ECF No. 48 at 6.[9] As such, Mr. Jara's National Housing Act claim is dismissed with prejudice.

E. Cal. Civ. Code § 2329.5

Mr. Jara alleges that Aurora violated California Code of Civil Procedure § 2329.5, which sets forth certain foreclosure-related requirements. The statute, for instance, requires the mortgagee, beneficiary, or authorized agent to contact the borrower in person or by telephone before filing a notice of default, "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(2).

Mr. Jara alleges that Aurora violated this statute by:

- "caus[ing] its debt collector, Cal Western, to record a notice of default prior to making any effort to contact [Mr.] Jara for the purpose of evaluating his financial condition and without offering [him] any alternatives to a non-judicial foreclosure sale";

- "order[ing] its debt collector, Cal Western[,] to proceed to a trustee sale despite the fact that it knew or should have known that no default existed at the time the notice of default was recorded"; and

- offered Mr. Jara a "phony" and "bogus" loan modification – which he accepted – that "failed to reduce the principal or to meaningfully reduce the interest" on his loans.

TAC, ECF No. 49 at ¶¶ 21-23.

Aurora moves to dismiss the claim on several grounds. First, Aurora argues that it is preempted

---

[9] The court explained: "As many courts have observed, the National Housing Act "govern[s] relations between the mortgagee and the government, and give[s] the mortgagor no claim for duty owed or for the mortgagee's failure to follow" the statute or its implementing regulations. *Mitchell v. Chase Home Finance LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008) (citations omitted). As a result, courts have held that the National Housing Act generally does not contain a private right of action. *See City of Rohnert Park v. Harris*, 601 F.2d 1040, 1046-47 (9th Cir. 1979); *Inman v. Suntrust Mortg., Inc.*, No. 1:10-CV-1031 AWI GSA, 2010 WL 3516309, at *2 (E.D. Cal. Sep. 3, 2010)*; Gaitan v. Mortg. Elec. Reg. Sys.*, No. EDCV 09-1009 VAP (MANx), 2009 WL 3244729, at *9 (C.D. Cal. Oct. 5, 2009)*; Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank of San Francisco*, 724 F. Supp. 683, 690 (N.D. Cal. 1989). Mr. Jara's attempt to amend his complaint to allege that Defendants failed to comply with the terms of the National Housing Act, then, is futile." 9/30/2011 Order, ECF No. 48 at 6.

by the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.* HOLA created the Office of Thrift Supervision ("OTS") to administer the statute, and "it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations." *State Farm Bank v. Reardon,* 539 F.3d 336, 342 (6th Cir. 2008). Under one of those regulations, 12 C.F.R. § 560.2, OTS makes clear that it "occupies the entire field of lending regulation for federal savings associations," leaving no room for conflicting state laws. The regulation goes on to provide a non-exhaustive list of examples of state laws which are expressly preempted. *See* 12 C.F.R. § 560.2(b). Four of these examples, which Aurora contends are relevant here, are state laws regarding "terms of credit, including . . . balance, payments due, or term of maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;" "loan related fees"; "disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms"; and "processing, origination, servicing, sale, or purchase of . . . mortgages . . . ." 12 C.F.R. § 560.2(b)(4), (5), (9), and (10); *see Stefan v. Wachovia*, C 09-2252 SBA, 2009 WL 4730904, at *3 (N.D. Cal. Dec. 7, 2009). If the type of law in question is listed in 12 C.F.R. § 560.2(b), it is preempted. *Silvas v. E Trade Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). "Even state laws of general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact federal savings associations in areas listed in § 560.2(b)." *Stefan*, 2009 WL 4730904, at *3 (holding all of Plaintiffs' state law claims regarding the foreclosure process, such as wrongful foreclosure, and Plaintiffs claim that the terms of the loan were unconscionable, were preempted by HOLA).

The HOLA regulations promulgated by OTS, however, apply only to "federal savings associations," and because the court will not take judicial notice of the Exhibits 14 and 15 of Aurora and MERS's request for judicial notice, neither defendant has established that they are such an entity.[10] In light of the uncertainty surrounding Aurora's status as an operating subsidiary of a

---

[10] The court notes, though, that it is unclear from Exhibits 14 and 15 whether Aurora is a "federal savings association." *See* RJN, Exs. 14-15, ECF No. 62-2. For instance, Aurora submitted a federal stock charter establishing Lehman Brothers Bank, FSB as a federal savings bank. *Id*. It

1  federal savings bank, the court cannot at this time determine whether HOLA preempts Mr. Jara's
2  claim. Aurora's motion to dismiss on this ground must be denied.

3  Nevertheless, Aurora next argues that the only remedy under Cal. Civ. Code § 2923.5 is the
4  postponement of a trustee's sale, and because the property at issue was sold at a trustee's sale on
5  August 25, 2010, § 2923.5 cannot apply. See RJN, Ex. 13 (trustee's deed upon sale). Aurora is
6  correct. In *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), the California Court of Appeal
7  considered § 2923.5 and persuasively reasoned that the only remedy for a violation is postponement
8  of a foreclosure sale. *Id*. at 235 ("There is nothing in section 2923.5 that even hints that
9  noncompliance with the statute would cause any cloud on title after an otherwise properly conducted
10 foreclosure sale."). Despite Mr. Jara's contention that the *Mabry* court's reasoning is mere dicta,
11 courts in this district have uniformly followed it and held that a plaintiff cannot state a claim
12 challenging the foreclosure process where a foreclosure sale has already occurred, as it has here.
13 *See, e.g., Garbutt v. Adamarc Financial Co., Inc.*, No. C10–05338 HRL, 2011 WL 2784548, at *2-3
14 (N.D. Cal. July 13, 2011); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 877-78
15 (N.D. Cal. 2010); *Aguilera v. Hilltop lending Corp.*, No. C 10-0184 JL, 2010 WL 3340566, at *4-5
16 (N.D. Cal. Aug. 25, 2010); *Atkins v. Litton Loan Servicing, LLP*, No. C 10-0561 RS, 2010 WL
17 3184350, at *4 (N.D. Cal. Aug. 11, 2010). Mr. Jara has cited no authority holding otherwise.
18 Accordingly, his claim for violation of § 2923.5 must be dismissed with prejudice.[11]

19 F.  Cal. Civ. Code § 2329.6

20 Mr. Jara alleges in the "General Allegations" section of his Third Amended Complaint that
21 Aurora (or its agents or assigns) failed to comply with California Civil Code § 2923.6. TAC, ECF
22 No. 49 at ¶ 11. Again, however, the court previously explained in its order granting his motion for
23 leave to file an amended complaint, he does not have a private right to action for such a claim.

---

25 also submitted an order of the OTS approving Lehman Brothers Bank, FSB's application
26 establishing "Aurora Loan Services, Inc." as its operating subsidiary. *Id*. (emphasis added). The
   "Aurora" that is a party to this action and which has moved to dismiss Mr. Jara's Third Amended
27 Complaint, though, is "Aurora Loan Services, LLC," not "Aurora Loan Services, Inc."

28   [11] Because the court dismisses with prejudice Mr. Jara's § 2923.5 claim, it need not address Aurora's argument that his claim is insufficiently pled.

9/30/2011 Order, ECF No. 48 at 6-7.[12]  As such, Mr. Jara claim for violation of California Civil Code § 2923.6 is dismissed with prejudice.

G.  Unfair Competition Law

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, prohibits any "unlawful, unfair or fraudulent business act or practice."  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838–39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal.4th 798, 827 (2003).

Mr. Jara alleges that Aurora violated the "unfair" and "fraudulent" prongs of the UCL.[13]  It is clear that "[i]n order to state a claim under the UCL based on fraudulent conduct, Mr. Jara must

---

[12] The court explained: "A California statute will only be deemed to contain a private right of action if the Legislature manifested an intent to create one. *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 305 (1988). Because California Civil Code § 2923.6 merely "creat[es] a duty between a loan servicer and a loan pool member[,] [t]he statute in no way confers standing on a borrower to contest a breach of that duty." *Farner v. Countrywide Home Loans*, No. 08cv2193 BTM (AJB), 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009).  "Numerous district courts have concluded that Section 2923.6 does not require loan servicers to modify loans and does not create a private right of action for borrowers."  *Roberts v. JP Morgan Chase Bank, N.A.*, Nos. 09-CV-01855-LHK, 09-CV-01879, 2011 WL 864949, at *4 (N.D. Cal. Mar. 11, 2011) (collecting cases); *Gaitan*, 2009 WL 3244729, at *7 (denying leave to amend complaint to add a claim under California Civil Code § 2923.6 because it would be futile); *see also Mabry v. Superior Court*, 185 Cal. App. 4th 208, 211 (4th Dist. 2010) (comparing California Civil Code § 2923.6, which "merely expresses the hope that lenders will offer loan modifications on certain terms," with California Civil Code § 2923.5, which "operates substantively on lenders" and "both creates rights and corresponding obligations"; holding that California Civil Code § 2923.5 *does* provide a plaintiff with a private right of action and suggesting that California Civil Code § 2923.6 *does not*)." 9/30/2011 Order, ECF No. 48 at 6-7.

[13] Mr. Jara actually alleges that Aurora's "deceptive," rather than "fraudulent," business practices violate the UCL, but the court assumes that he means to allege a violation of the "fraudulent" prong. *See* TAC, ECF No. 49 at ¶ 43. Moreover, to the extent that Mr. Jara also attempts to allege a violation of the "unlawful" prong of the UCL, such an attempt fails because, as described herein, he fails to sufficiently allege a viable predicate claim.

allege, with particularity, facts sufficient to establish that the public would likely be deceived by Defendants' conduct." *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C–11–02629 JCS, 2011 WL 4405659, at *9-10 (N.D. Cal. Sep. 21, 2011) ("UCL claims premised on fraudulent conduct trigger the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.").

The standard is less clear with respect to the "unfair" prong. As the district court in *Phipps v. Wells Fargo* has explained:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256, 106 Cal. Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46.
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–1261, 39 Cal. Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595–596, 101 Cal. Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128 Cal. Rptr.2d 389 (2002).
>
> . . .
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Bardin*, 136 Cal. App. 4th at 1260, 39 Cal. Rptr.3d 634; *Davis*, 179 Cal. App. 4th at 594–595, 101 Cal. Rptr.3d 697)).
>
> . . .
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Davis*, 179 Cal. App. 4th 597–598, 101 Cal. Rptr.3d 697; *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr.3d 770 (2006)).

*Phipps v. Wells Fargo*, No. CV F 10–2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan.27, 2011).

In his Third Amended Complaint, Mr. Jara does not specifically list how Aurora allegedly

violated the UCL. *See* TAC, ECF No. 49 at ¶¶ 41-43. Rather, he simply "incorporates by reference all the allegations in paragraphs 1 through 41, inclusive, as is set forth in full." *Id.* at ¶ 41. This method of pleading is insufficient. For instance, any allegations in relation to the "fraud" prong must meet Rule 9(b)'s heightened pleading standard, but Mr. Jara's allegations do not provide "the who, what, when, where, and how' of the misconduct charged." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'") (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). And because Mr. Jara generally refers to earlier paragraphs in his Third Amended Complaint, the court is unable to determine whether his allegations satisfy any of the standards for a claim under the "unfair" prong. Therefore, his claim for violations of the UCL is dismissed without prejudice.

H. Quiet Title

Mr. Jara also brings a claim to quiet title. *See* TAC, ECF Nos. 49 at ¶¶ 26-30. The purpose of a quiet title action is "'to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.'" *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970) (quoting *Peterson v. Gibbs*, 147 Cal. 1, 5 (1905)). Quiet title claims are governed by California Code of Civil Procedure § 761.020, which provides that a complaint to quiet title "shall be verified," and requires it to include all of the following:

> (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any.
>
> (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession.
>
> (c) The adverse claims to the title of the plaintiff against which a determination is sought.
>
> (d) The date as of which the determination is sought. If the determination is sought as

of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.

(e) A prayer for the determination of the title of the plaintiff against the adverse claims.

Cal. Civ. Proc. Code § 761.020.

A requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the deed of trust." *Kelley v. Mortgage Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). "Thus, it is dispositive as to this claim that, under California law, a borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (citing *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted)). Because Mr. Jara fails to allege any ability or willingness to tender the amount owed under the note, his claim for quiet title fails. It is dismissed without prejudice.

I. Cancellation of Instrument

Mr. Jara also brings a claim for "cancellation of instrument." *See* TAC, ECF No. 49 at ¶¶ 26-30. Although he does not so specify, the Court assumes that he is asserting a claim under California Civil Code § 3412, which states a "written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cancellation is an equitable remedy. *Strong v. Strong*, 22 Cal.2d 540, 546 (1943).[14] Here, Mr. Jara alleges that cancellation of the deed is proper because Aurora violated Cal. Civil Code § 2329.5 and

---

[14] "To 'cancel' a contract means to abrogate so much of it as remains unperformed. It differs from 'rescission,' which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made." *Young v. Flickinger*, 75 Cal. App. 171, 174 (1925); *accord Phleger v. Countrywide Home Loans, Inc.*, No. C 07-01686, 2009 WL 537189, at *15 (N.D. Cal. Mar.3, 2009).

1 Cal Western violated the FDCPA. TAC, ECF No. 49 at ¶ 29.[15] But as the court explained above, both of these claims fail. Accordingly, Mr. Jara's claim to cancel the deed fails, too, and it is dismissed without prejudice.

## J. Declaratory Judgment

Mr. Jara also seeks a declaratory judgment against Aurora. *See* TAC, ECF No. 49 at ¶¶ 36-41. The Declaratory Judgment Act gives a district court discretion to exercise its jurisdiction over a claim for declaratory relief. *See* 28 U.S.C. § 2201. A declaratory relief claim requires a present and actual controversy between the parties. *See Ngoc Nguyen,* 749 F. Supp. 2d at 1035; *Cal. Ins. Guar. Ass'n v. Superior Court*, 231 Cal. App.3d 1617, 1623 (1991). Mr. Jara alleges that "Aurora instructed its agent, the original nominal lender Pacific Community Mortgage, Inc., to divide the loan into two parts" "to avoid the California anti-deficiency laws and to deny [him] a proper TILA disclosure statement that accurately defined the financial terms of the entire obligation." TAC, ECF No. 49 at ¶ 37. Mr. Jara suggests that Aurora denies his allegations, creating "[a]n actual controversy . . . regarding whether the loan was structured illegally." TAC, ECF No. 49 at ¶¶ 37, 38.

Aurora argues that Mr. Jara's allegations are vague and unsupported, and the court agrees. For one, Mr. Jara implies that there is something nefarious about dividing a mortgage into two loans, but he cites nothing that suggests why this is true. His claim is also vague, as he alleges that Aurora wanted to avoid "California's anti-deficiency laws," but he does not make clear which one(s) Aurora wanted to avoid or how it allegedly did so.[16] And to the extent that his claim is based on a TILA violation, he has failed to sufficiently allege one, as explained above. Accordingly, his claim fails

---

[15] Mr. Jara alleges: "Aurora caused its debt collector, Cal Western, to record a notice of default before it engaged in the required loss mitigation efforts [required by Cal. Civil. Code § 2329.5]. Also, Cal. Western wrongfully reconveyed title to Aurora without complying with its mandatory obligations under the FDCPA. Thus, [Mr.] Jara requests that this Court cancel the trustee deed executed by Cal Western in favor of Aurora and reinstate the title of [Mr.] Jara, subject to the properly modified deed of trust." TAC, ECF No. 49 at ¶ 29.

[16] In the "General Allegations" section of his Third Amended Complaint, Mr. Jara alleges that "[t]he $850,000.00 obligation was packaged into two obligations for the purpose of evading the California anti-deficiency laws such as [California Code of Civil Procedure §§] 580(d) and 726." TAC, ECF No. 49 at ¶ 6. Mr. Jara, however, does not make clear how Aurora's alleged acts violated these two statutes.

and is dismissed without prejudice.

## V. CONCLUSION

Based on the foregoing, Defendants' motions to dismiss Mr. Jara's Third Amended Complaint is GRANTED. His claims for violation of the FDCPA (15 U.S.C. § 1692g), the National Housing Act, Cal. Civ. Code § 2329.5, and Cal. Civ. Code § 2329.6 are dismissed with prejudice. His claims for violation of TILA, RESPA, and the UCL, and for quiet title, cancellation of instrument, and declaratory judgment are dismissed without prejudice. Mr. Jara may file a Fourth Amended Complaint within 30 days from the date of this order.

This disposes of ECF Nos. 50, 51.

**IT IS SO ORDERED.**

Dated: December 14, 2011

_____
LAUREL BEELER
United States Magistrate Judge