1
2
3
4
5
6
7
8

**UNITED STATES  DISTRICT COURT**

9

Northern District of California

10

San Francisco Division

11

JOSE A. JARA,

No. C 11-00419 LB

12

Plaintiff,

**ORDER (1) GRANTING
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FOURTH
AMENDED COMPLAINT AND (2)
DENYING AS MOOT DEFENDANTS'
MOTION TO STRIKE PLAINTIFF'S
OPPOSITION BRIEF**

13

v.

14

AURORA LOAN SERVICES, et al.,

15

Defendants.

16

_____/

[Re: ECF Nos. 74-1, 79]

17

## I.  INTRODUCTION

18

Plaintiff Jose Jara sued Defendants Aurora Loan Services, LLC ("Aurora") and Mortgage

19

Electronic Registration Systems ("MERS") (collectively, "Defendants") for violation of federal and

20

state law in connection with the foreclosure and sale of his property in South San Francisco,

21

California.  Fourth Amended Complaint ("Fourth AC"), ECF No. 72.[1]

22

Before the court is Defendants' motion to dismiss Mr. Jara's Fourth Amended Complaint.

23

Motion to Dismiss ("MTD"), ECF No. 74-1.  Pursuant to Civil Local Rule 7-1(b), the court finds

24

this matter suitable for determination without oral argument and vacates the April 5, 2012 hearing.

25

For the reasons explained below, the court GRANTS Defendants' motion and DISMISSES WITH

26

PREJUDICE all of Mr. Jara's claims.

27

28

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

## II. BACKGROUND

**A. Factual Allegations and History**

On January 18, 2006, Mr. Jara purchased property at 330 Arbor Drive in South San Francisco, California. Fourth AC, ECF No. 72, ¶¶ 1, 5; Request for Judicial Notice ("RJN"), ECF No. 62, Ex. 3. To fund the purchase, he borrowed $865,000 from Pacific Community Mortgage, Inc. ("Pacific"), which packaged the loan as two separate notes. Fourth AC, ECF No. 72, ¶¶ 5, 6; RJN, ECF No. 62, Exs. 1, 2.[2] Pacific subsequently transferred its servicing rights on the first note to Aurora. Fourth AC, ECF No. 49, ¶¶ 2, 5; RJN, ECF No. 62, Ex. 4.

---

[2] Previously, Aurora and MERS asked that the court take judicial notice of the following documents: (1) an adjustable rate note for $648,750 dated January 10, 2006; (2) a note for $216,250 dated January 10, 2006; (3) a deed of trust that was recorded in the San Mateo County Official Records on January 18, 2006; (4) a notice of the transfer of servicing rights from Pacific Community Mortgage, Inc. to Aurora dated January 30, 2006; (5) a mortgage broker fee disclosure dated November 26, 2011; (6) a repayment agreement between Aurora and Mr. Jara dated April 3, 2011; (7) a special forbearance agreement between Mr. Jara and Aurora dated May 8, 2009; (8) a Home Affordable Modification Trial Period Plan effective August 17, 2009; (9) a substitution of trustee that was recorded in the San Mateo County Official Records on November 4, 2008; (10) a notice of default that was recorded in the San Mateo County Official Records on September 25, 2008; (11) a corporate assignment of deed of trust that was recorded in the San Mateo County Official Records on November 10, 2008; (12) a notice of trustee's sale that was recorded in the San Mateo County Official Records on February 4, 2010; (13) a trustee's deed upon sale that was recorded in the San Mateo County Official Records on September 7, 2010; (14) a federal stock charter for Lehman Brothers Bank, FSB that was executed by the Office of Thrift Supervision ("OTS"), an OTS order approving Lehman Brothers Bank, FSB's application to establish certain operating subsidiaries, and a secretary's certificate identifying Aurora Loan Services LLC as a subsidiary of Lehman Brothers Bank, FSB; and (15) a secretary's certificate certifying that Lehman Brothers Bank, FSB changed its name to Aurora Bank FSB on April 24, 2009. RJN, ECF No. 62, Exs. 1-15.

The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because Exhibits 3, 9, 10, 11, 12, and 13 are public records, the court took judicial notice of the undisputable facts contained in them. *See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); Fed. R. Evid. 201(b); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011). And although several other documents (Exs. 1, 2, 4, 5, 6, 7, and 8) are not public records, the court took judicial notice of them because they are documents whose authenticity was not challenged and Mr. Jara's complaint relied upon them. *See Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). The court did not, though, take judicial notice of Exhibits 14 and 15 because Mr. Jara's complaint did not rely upon them.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  In 2008, Mr. Jara "sustained substantial personal problems that qualified as a hardship under the

2  [Home Affordable Modification Program] requiring modification of the terms of the subject

3  obligation and security instruments."  Fourth AC, ECF No. 72, ¶ 7; *see also* RJN, ECF No. 62, Ex.

4  10 (notice of default).  Thereafter, Mr. Jara entered into agreements to modify the terms of his loan.

5  Fourth AC, ECF No. 72, ¶ 15.[3]  Mr. Jara alleges that he was current on his obligations under the

6  agreements when California Western Reconveyance Corporation ("Cal Western") recorded a notice

7  of default on the property.  Fourth AC, ECF No. 49, ¶¶ 9, 15-16; RJN, Ex. 10 (notice of default).

8  On August 25, 2010, Cal Western conducted a trustee's sale at which Aurora purchased the

9  property.  RJN, ECF No. 62, Ex. 13 (trustee's deed upon sale).

10  **B.  Procedural History**

11  Mr. Jara filed the present lawsuit against Aurora, MERS, and Cal Western in San Mateo County

12  Superior Court on  November 10, 2010.  Notice of Removal, ECF No. 1, Ex. 1 at 5-36

13  ("Complaint").  Thirteen days later, on November  23, 2010, he filed a First Amended Complaint as

14  a matter of right.  Notice of Removal, ECF No. 1, Ex. 2 at 40-49 ("FAC").  The First Amended

15  Complaint added attorneys' fees and costs to the relief previously sought  in the original complaint.

16  *Compare* Notice of Removal, ECF No. 1, Ex. 1 at 13 *with* Notice of Removal, ECF No. 1, Ex. 2 at

17  48.  On January 28, 2011, Aurora and MERS removed the case to this court.  Notice of Removal,

18  ECF No. 1 at 1-4.  The court denied Mr. Jara's motion to remand on June 6, 2011.  06/06/2011

19  Order, ECF No. 30.

20  Aurora, MERS, and Cal Western filed motions to dismiss the First Amended Complaint on June

21  28, 2011.  Motion to Dismiss (Aurora and MERS), ECF No. 33; Joinder and Motion (Cal Western),

22  ECF No. 34.  Mr. Jara did not file an opposition to either motion.  Instead, on August 16, 2011, he

23  filed a Second Amended Complaint (titled as a "First Amended Complaint in Federal Court"), which

25  ___

26  [3] The court notes that Aurora and MERS say that there was no permanent modification of Mr. Jara's loan.  Rather, they say that Mr. Jara entered into several repayment or "workout" agreements with Aurora, the first of which expressly provided that "nothing contained herein shall

27  constitute a waiver of any or all of the Lender's rights or remedies including the right to commence/continue collection proceedings, including but not limited to a foreclosure action."

28  MTD, ECF No. 74-1 at 15; *see also* RJN, ECF No. 62, Exs. 6-8.

C 11-00419

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the court struck from the record because he had neither the defendants' consent nor the court's

2   permission to file it.  Second Amended Complaint, ECF No. 41; Order Striking Second Amended

3   Complaint, ECF No. 43.  The court's order did, though, allow Mr. Jara to file a motion for leave to

4   file another amended complaint, and he did so on August 29, 2011.  Order Striking Second

5   Amended Complaint, ECF No. 43 at 3; Motion for Permission to File Amended Complaint, ECF No.

6   44.  On September 30, 2011, the court granted Mr. Jara's motion for leave to file another amended

7   complaint.  09/30/2011 Order, ECF No. 48.

8       Mr. Jara then timely filed his Third Amended Complaint.  Third Amended Complaint ("TAC"),

9   ECF No. 49.  Aurora, MERS, and Cal Western moved to dismiss that complaint as well, and this

10  time Mr. Jara opposed their motions.  Motion to Dismiss TAC (Aurora and MERS), ECF No. 50;

11  Joinder and Motion to Dismiss TAC (Cal Western), ECF No. 51; Opposition re: Motions to Dismiss

12  TAC, ECF No. 58.  On December 14, 2011, the court granted the defendants' motions, dismissing

13  some of Mr. Jara's claims with prejudice and some without, and granting Mr. Jara leave to file a

14  Fourth Amended Complaint.  12/14/2011 Order, ECF No. 68.

15      Mr. Jara did so on January 20, 2012.  Fourth AC, ECF No. 72.  In his Fourth Amended

16  Complaint, which is only brought against Aurora and MERS, he brings the following claims: (1)

17  violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; (2) violation of the

18  Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (3) quiet title; (4) cancellation

19  of instrument; (5) violation of California's Unfair Competition Law ("UCL"), Cal. Civ. Code §

20  17200, *et seq.*; and (6) declaratory relief.  *See* Fourth AC, ECF No. 72.[4]  Aurora and MERS again

21  moved to dismiss the complaint.  MTD, ECF No. 74-1.  Mr. Jara opposed the motion.  Opposition,

22

23  _____

24      [4] In previous iterations of his complaint, Mr. Jara also sued Cal Western.  *See*, *e.g.*, Third
    Amended Complaint, ECF No. 49.  The Fourth Amended Complaint, while listing Cal Western as a

25  defendant in the caption, did not describe Cal Western as a party or actually contain any claims
    against Cal Western anywhere else.  *See* Fourth AC, ECF No. 72, ¶¶ 2-4 (describing only Aurora

26  and MERS as "defendants"); 10-12 (first cause of action brought against Aurora); 13-18 (second
    cause of action brought against Aurora); 19-23 (third cause of action brought against Aurora and

27  MERS); 24-29 (fourth cause of action brought against Aurora); 30-31 (fifth cause of action brought
    against Aurora).  As such, the court made clear in a previous order that Cal Western would no longer

28  be considered a defendant to this action.  03/07/2012 Order, ECF No. 77.

C 11-00419

1  ECF No. 78.[5]

2  ### III. LEGAL STANDARD

3      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

4  not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp.*

5  *v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

6  factual content that allows the court to draw the reasonable inference that the defendant is liable for

7  the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard

8  is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

9  defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557.). "While a complaint

10  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

11  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

12  conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual

13  allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.

14  at 555 (internal citations and parentheticals omitted).

15       In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

16  and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551

17  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

18      If the court dismisses the complaint, it should grant leave to amend even if no request to amend

19  is made "unless it determines that the pleading could not possibly be cured by the allegation of other

20  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

21  *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party

22  repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*

23  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

24  district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

25  with leave to amend).

26  _____

27      [5] Mr. Jara's opposition brief was untimely. *See* N.D. Cal. Civ. L.R. 7-3 (effective Sept. 8, 2011). Defendants moved to strike the brief. Motion to Strike, ECF No. 79. Because the court

28  grants Defendants' motion to dismiss anyway, the court DENIES AS MOOT Defendants' motion to strike.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**IV.  DISCUSSION**

**A.  Truth in Lending Act**

Mr. Jara brings a claim against Aurora for violation of TILA.  TILA aims to "avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  It "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers."  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980) (quoting 15 U.S.C. § 1601).  It "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635 & 1638).

Mr. Jara alleges that Aurora failed to notify him of the "the identity of the actual owner" of his loans in violation of 15 U.S.C. § 1641(g).  Fourth AC, ECF No. 72, ¶ 11.  Subsection (g), which was added to § 1641 as part of the Helping Families Save Their Homes Act and which became effective on May 19, 2009, provides in relevant part:

> In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, <u>the creditor that is the new owner or assignee of the debt</u> shall notify the borrower in writing of such transfer, including—
>
> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;
>
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>
> (D) the location of the place where transfer of ownership of the debt is recorded; and
>
> (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g)(1) (emphasis added).

This TILA claim, which is new to Mr. Jara's Fourth Amended Complaint, fails.  15 U.S.C. § 1641(g) only applies to creditors who are new owners or assignees of mortgage loan, and Mr. Jara does not allege that Aurora is a new owner or assignee of his loan.  He states that, although he believes Pacific transferred ownership of his loan at some point in time, he does not know to whom it was transferred.  Fourth AC, ECF No. 72, ¶¶ 2, 10, 12.  In fact, he uses his Fourth Amended Complaint to ask Aurora who the owner is.  *Id*., ¶ 10, 12.  Moreover, publicly-filed documents

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1   submitted by Defendants suggest that Aurora became a servicer, not an owner or assignee, of Mr.

2   Jara's loan.  *See* RJN, ECF No. 62, Ex. 4.  Without an allegation that Aurora, as owner or assignee

3   of his loan, failed to notify him in writing of a transfer of ownership of his loan that occurred on or

4   after May 19, 2009, Mr. Jara's claim for violation of § 1641(g) must fail.[6]

5        To the extent that Mr. Jara attempts to allege a claim for violation of 15 U.S.C. § 1641(f)(2) (as

6   he attempted to do in his previous complaints), his claim still fails.  As Defendants correctly point

7   out, 15 U.S.C. § 1641(f)(2) provides in relevant part: "Upon written request by the obligor, the

8   servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and

9   telephone number of the owner of the obligation or the master servicer of the obligation."  15 U.S.C.

10  § 1641(f)(2).  However, a servicer is not to be treated as the assignee of an obligation unless the

11  servicer is also the owner of that obligation.  15 U.S.C. §§ 1641(f)(1) ("A servicer of a consumer

12  obligation arising from a consumer credit transaction shall not be treated as an assignee of such

13  obligation for purposes of this section unless the servicer is or was the owner of the obligation."),

14  1641(f)(2) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not

15  be treated as the owner of the obligation for purposes of this section on the basis of an assignment of

16  the obligation from the creditor or another assignee to the servicer solely for the administrative

17  convenience of the servicer in servicing the obligation. . . ."); *see also Consumer Solutions REO,*

18  *LLC v. Hillery*, No. C-08-4357 EMC, 2010 WL 144988, at *3 (N.D. Cal. Jan. 8, 2010) ("With

19  respect to Saxon, a TILA damages claim predicated on a violation of § 1641(f)(2) cannot stand

20  because TILA allows for a suit against a creditor or an assignee but not a servicer except under

21  narrow circumstances not applicable here."); *Fullmer v. JPMorgan Chase Bank*, NA, No.

22  2:09-cv-1037 JFM, 2010 WL 95206, at *3 (E.D. Cal. Jan. 6, 2010) ("Civil liability under TILA

23  applies to creditors.").

24       Despite alleging that "Aurora refused to advise [him] whether it is a the actual owner of the

25  _____

26       [6] The court also notes that for 15 U.S.C. § 1641(g) to apply here, Mr. Jara's loan must have
    been transferred or assigned on or after May 19, 2009, and he makes no such timing allegation.  *See*
27  *generally* Fourth AC, ECF No. 72.  And publicly-filed documents suggest that Aurora became a
    servicer of Mr. Jara's loan on March 1, 2006, well before the effective date of 15 U.S.C. 1641(g).
28  RJN, ECF No. 62, Ex. 4.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  obligation and security instruments, or merely the servicer of agent for unspecified and unidentified

2  true owners," Fourth AC, ECF No. 74-1, ¶ 2, Mr. Jara never alleges that he sent any written request,

3  as required by the statute, to Aurora to obtain any of the information he lacks, nor does he even

4  address this problem – pointed out by Defendants in their motion to dismiss – in his opposition. *See*

5  *generally* Fourth AC, ECF No. 74-1; Opposition, ECF No. 78.[7]

6      As the court has given Mr. Jara opportunities to allege a viable TILA claim and, despite the

7  court's guidance, he has yet to do so, his TILA claim is DISMISSED WITH PREJUDICE. *See*

8  *Ferdik*, 963 F.2d at 1261.

9  **B. Federal Debt Collection Practices Act**

10     In the first three iterations of his complaint, Mr. Jara brought a claim for violation of the FDCPA

11 against Cal Western, the company that filed the foreclosure-related documents and conducted the

12 trustee's sale. *See* Notice of Removal, ECF No. 1, Ex. 1 at 11; *id.* at 46; TAC, ECF No. 49, ¶¶ 13-

13 18. Although he did not specify it, his claim against Cal Western was for violation of 15 U.S.C. §

14 1692g(a), which provides that within five days of making initial contact with a debtor "in connection

15 with the collection of any debt," a debt collector must send the debtor a written notice containing the

16 amount of the debt, the name of the creditor, the time period in which the validity of the debt may be

17 challenged, and instructions explaining how the debtor may obtain further evidence of the debt and

18 information about the creditor. Because Mr. Jara did not sufficiently allege that Cal Western was a

19 "debt collector" and could not sufficiently allege that Cal Western engaged in debt collection

20 activity, the court dismissed his claim under 15 U.S.C. § 1692g(a) with prejudice. 12/14/2011

21 ────────────

22     [7] To the extent Mr. Jara attempts to use his Fourth Amended Complaint as the "written
request" required to allege a claim under 15 U.S.C. § 1641(f)(2), his attempt is inappropriate. To
23 state a claim founded upon 15 U.S.C. § 1641(f)(2), the "written request" must be sent directly to the
loan servicer "prior to the filing" of the lawsuit, and the servicer must be given a reasonable amount
24 of time to respond. *See Bishop v. Quicken Loans, Inc.*, No. 2:09-01076, 2010 WL 3522128, at *6
25 (S.D.W.Va. Sept. 8, 2010) (dismissing alleged violation of 15 U.S.C. § 1641(f)(2) that was premised
upon loan servicer's failure to comply with "written request" contained in the plaintiff borrower's
26 first set of interrogatories and *request for production of documents); Ording v. BAC Home Loans
Servicing, LP*, No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) ("Section
27 1641(f) does not specify a period for compliance with this obligation. Thus, the requested
information must be disclosed within a reasonable time.") (citation omitted). Mr. Jara has not
28 alleged any facts suggesting he complied with these requirements.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Order, ECF No. 68 at 5-9.[8]

2         In his Fourth Amended Complaint, Mr. Jara, for the first time, alleges a FDCPA against Aurora.

3    Fourth AC, ECF No. 72, ¶¶ 13-18.  Mr. Jara alleges that"[a]fter this loan went into default, the

4    unidentified true owner retained Aurora to engage in debt collection activities" and that "[d]ebt

5    collection of delinquent loans is a principal part of the business of Aurora."  Fourth AC, ECF No.

6    72, ¶ 14.  He goes on to allege that he and Aurora entered into a loan modification and that he was

7    current on his payments (as modified by the agreement) when Aurora instructed Cal Western to

8    begin foreclosure proceedings.  *Id.*, ¶¶ 15-16.  Mr. Jara alleges that Aurora "instructed Cal Western

9    not to provide [Mr.] Jara [with] the Debt Validation Notice required by the FDCPA."  *Id.*, ¶ 16.  He

10   further alleges that Aurora engaged in false, deceptive, and misleading representations by preparing

11   "forbearance and modification agreements" (which he alleges were abusive and misleading) and

12   presenting them to him "with the express oral representation [that he] would avoid a non-judicial

13   trustee sale and foreclosure if he complied with [their terms]," when, in reality, Aurora would go on

14   to instruct Cal Western to proceed with foreclosure anyway.  *Id.*

15        But there is a fatal problem with Mr. Jara's claim: He does not, and cannot, sufficiently allege

16   that Aurora was a "debt collector."  To be held liable for violation of the FDCPA, a defendant must

17   fall within the FDCPA's definition of "debt collector."  *See Heintz v. Jenkins*, 514 U.S. 291, 294

18   (1995); *see also Romine v. Diversified Collection Servs.*, 155 F.3d 1142, 1146 (9th Cir. 1998).  The

19   court previously explained that a "debt collector" is defined, in relevant part, as:

20          any person who uses any instrumentality of interstate commerce or the mails in any
             business the principal purpose of which is the collection of any debts, or who
21          regularly collects or attempts to collect, directly or indirectly, debts owed or due or
             asserted to be owed or due another. . . . [T]he term includes any creditor who, in the
22          process of collecting his own debts, uses any name other than his own which would
             indicate that a third person is collecting or attempting to collect such debts.  For the
23          purpose of section 1692f(6) of this title, such term also includes any person who uses

24   _____

25        [8] To state a claim under the FDCPA, "a plaintiff must allege facts that establish the
     following: (1) the plaintiff has been the object of collection activity arising from a consumer debt;
26   (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and
     (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by
27   the FDCPA."  *Adesokan v. U.S. Bank, N.A.,* No. 11-cv-01236-LJO-SKO, 2011 WL 5341178, at *4
     (E.D. Cal. Oct. 31, 2011) (citing *Frazier v. Absolute Collection Serv., Inc.,* 767 F. Supp. 2d 1354,
28   1363 (N.D. Ga. 2011)).

any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).  "The term does not include," however, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person [or] . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii) & (iii).  Indeed, "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95–382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1698; *Kizer v. Finance America Credit Corp.*, 454 F. Supp. 937, 939 (N.D. Miss. 1978)).

Mr. Jara never specifically alleges that Aurora was a "debt collector," but he does allege that Aurora was retained to engage in debt collection activities after he defaulted on his loan.  Fourth AC, ECF No. 72, ¶ 14.  This allegation – which contradicts Mr. Jara's attempts in his previous complaints to allege that it was Cal Western who was retained as a "debt collector" – is belied by the notice submitted by Defendants (and of which this court took judicial notice) that shows that Aurora became the servicer of Mr. Jara's loan well before he defaulted on it.  RJN, ECF No. 62, Ex. 4.[9]  The notice states: "As you were previously notified by Pacific Community Mortgage, the servicing of your loan, that is, the right to collect payment from you, is being transferred to Aurora Loan Services ("Aurora") effective March 01, 2006.  The assignment, sale of transfer of the servicing of your loan does not affect any terms or conditions of your loans instruments . . . ."  *Id.*  Mr. Jara did not default on his loan until 2008.  Fourth AC, ECF No. 72 at ¶ 7; RJN, ECF No. 62, Ex. 10 (notice of default).  Because Aurora became servicer to Mr. Jara's loan before he defaulted,

_____

[9] In general, the court's inquiry on a motion to dismiss is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  However, the court need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice.  *Id.*

1    Aurora cannot be a "debt collector" for purposes of the FDCPA.  15 U.S.C. § 1692a(6)(F)(iii); *see*

2    *Perry*, 756 F.2d at 1208 (a debt collector does not include the consumer's mortgage servicing

3    company, as long as the debt was not in default at the time it was assigned); *Distor v. U.S. Bank,*

4    *N.A.*, No. C 09-02086 SI, 2009 WL 3429700, at *5 (N.D. Cal. Oct. 22, 2009) ("Defendant GMAC

5    was the loan servicer before the mortgage went into default, and the FDCPA excludes persons

6    attempting to collect a debt that was not in default at the time it was obtained.").[10]  Accordingly,

7    because further attempts to allege a FDCPA claim against Aurora would be futile, Mr. Jara's

8    FDCPA claim is DISMISSED WITH PREJUDICE.[11]  *See Lopez*, 203 F.3d at 1127.

9    **C.  Quiet Title**

10        Mr. Jara previously alleged a claim for quiet title.  TAC, ECF No. 49, ¶ 26-30.  In its 12/14/2011

11   Order, the court explained:

12        A requirement of an action to quiet title is an allegation that plaintiffs "are the rightful
          owners of the property, i.e., that they have satisfied their obligations under the deed
13        of trust."  *Kelley v. Mortgage Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057
          (N.D. Cal. 2009).  "Thus, it is dispositive as to this claim that, under California law, a
14        borrower may not assert 'quiet title' against a mortgagee without first paying the
          outstanding debt on the property."  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.
15        Supp. 2d 952, 975 (N.D. Cal. 2010) (citing *Miller v. Provost*, 26 Cal. App. 4th 1703,
          1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his
16        title against the mortgagee") (citation omitted)).

17   12/14/2011 Order, ECF No. 68 at 18.  Because Mr. Jara failed to allege any ability or willingness to

18   tender the amount owed, the court dismissed his claim.  *Id.*

19        Mr. Jara again alleged a quiet title claim in his Fourth Amended Complaint, and he again failed

20

21        [10] To the extent that Mr. Jara attempts to rely upon Cal Western's foreclosure-related acts to
22   allege a FDCPA claim against Aurora, his claim also fails because, as described above, the court
     dismissed with prejudice Mr. Jara's FDCPA claim against Cal Western based on those acts.
23

24        [11] Because Mr. Jara's inability to allege that Aurora is a "debt collector" is fatal to his
     FDCPA claim, the court need not address the parties' arguments about whether Aurora's conduct,
25   even if it could be a "debt collector," constituted debt collection activities.  *See* MTD, ECF No. 74-1
     at 24-25; Opposition, ECF No. 78 at 3-6; Reply, ECF No. 84 at 4.  The court will say, however, that
26   Mr. Jara's attempt to use the Consumer Financial Protection Bureau's *amicus brief* in *Birster v.*
     *American Home Mortgage Servicing, Inc.*, No. 11-13574-G (11th Cir. Dec. 22, 2011) is misplaced
27   because the brief discusses claims against a loan servicer who began servicing the plaintiffs' loan
     *after* default occurred, thereby avoiding the "debt collector definition problem discussed above.
28   That is not the case here.

C 11-00419

1   to allege a valid and viable tender offer.  *See generally* Fourth AC, ECF No. 72.[12]  He also failed to

2   address this deficiency – which Defendants' pointed out in their motion to dismiss – in his

3   opposition.  *See generally* Opposition, ECF No. 78.  Given his unwillingness or inability to cure this

4   deficiency, despite having numerous opportunities to do so, his quiet title claim is DISMISSED

5   WITH PREJUDICE.  *See Ferdik*, 963 F.2d at 1261.

6   **D.  Cancellation of Instrument**

7       Once again Mr. Jara brings a claim against Defendants for "cancellation of instrument."  And as

8   he did in his Third Amended Complaint, Mr. Jara again alleges that cancellation of the deed is

9   proper because of underlying violations of the FDCPA, the National Housing Act, 12 U.S.C. §

10  1715(u), and Cal. Civ. Code §§ 2329.5 and 2329.6.  FAC, ECF No. 72, ¶¶ 8, 22-23.  In fact, the

11  paragraphs in his Fourth Amended Complaint that contain his allegations are identical to the ones in

12  his dismissed Third Amended Complaint.  *Compare* Fourth AC, ECF No. 72, pp 22-23 *with* TAC,

13  ECF No. 49, ¶¶ 29-30.

14      In its 12/14/2011 Order, the court dismissed with prejudice Mr. Jara's claims under the National

15  Housing Act and Cal. Civ. Code §§ 2329.5 and 2329.6.  12/14/2011 Order, ECF No. 68 at 11-15.

16  And because his FDCPA claim once again fails and is dismissed with prejudice, his claim for

17  cancellation of instrument fails and is DISMISSED WITH PREJUDICE, too.  *See Lopez*, 203 F.3d

18  at 1127.

19  **E.  Unfair Competition Law**

20      Mr. Jara previously alleged, with few particulars, that Aurora violated the "unfair" and

21

22  _____

23      [12] "Under California law, in an action to set aside a trustee's sale, a plaintiff must
    demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'"

24  *Pantoja v. Countrywide Home Loan, Inc.*, 640 F. Supp. 2d 1177, 1184 (N.D. Cal. 2009) (quoting
    *Karlsen v. American Sav. & Loan Assn.*, 15 Cal. App. 3d 112, 117 (1971)); *see also Arnolds Mgmt.*

25  *Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984) ("[A]n action to set aside a trustee's sale for
    irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of

26  the debt for which the property was security.)  "A plaintiff must (1) demonstrate a willingness to pay
    and (2) show the ability to pay."  *Pantoja*, 640 F. Supp. 2d at 1184 (citing *In re Worcester*, 811 F.2d

27  1224, 1231 (9th Cir. 1987)) (emphasis added).  Here, Mr. Jara merely alleges that he "is prepared to
    pay" the "lien of Aurora."  Fourth AC, ECF No. 72, p 20.  He does not allege any actual ability to

28  tender the outstanding debt.

"fraudulent" prongs of California's Unfair Competition Law.  TAC, ECF No. 49, pp 42-43.[13]  The

court dismissed his claim and provided the following explanation for doing so:

> In his Third Amended Complaint, Mr. Jara does not specifically list how Aurora allegedly violated the UCL.  *See* TAC, ECF No. 49 at ¶¶ 41-43.  Rather, he simply "incorporates by reference all the allegations in paragraphs 1 through 41, inclusive, as is set forth in full."  *Id*. at ¶ 41.  This method of pleading is insufficient.  For instance, any allegations in relation to the "fraud" prong must meet Rule 9(b)'s heightened pleading standard, but Mr. Jara's allegations do not provide "the who, what, when, where, and how' of the misconduct charged."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'") (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).  And because Mr. Jara generally refers to earlier paragraphs in his Third Amended Complaint, the court is unable to determine whether his allegations satisfy any of the standards for a claim under the "unfair" prong.  Therefore, his claim for violations of the UCL is dismissed without prejudice.

12/14/2011 Order, ECF No. 68 at 16-17.

Aside from changing some of the paragraph numbering, Mr. Jara's UCL allegations – which

again are for claims for violation of the "unfair" and "fraudulent" prongs of the statute – are

identical to the ones that the court previously dismissed.  *Compare* Fourth AC, ECF No. 72, pp

30-31 *with* TAC, ECF No. 49, ¶ 42-43.  As he made no attempt to cure the previously-noted

deficiencies, and as his other claims all fail, his UCL claim must fail again.  Because he has had

multiple opportunities to allege a viable UCL claim and has yet to do so, his UCL claim is

DISMISSED WITH PREJUDICE.  *See Ferdik*, 963 F.2d at 1261.

**F. Declaratory Relief**

Mr. Jara brought a claim for a declaratory judgment against Aurora in his Third Amended

Complaint.  *See* TAC, ECF No. 49, ¶¶ 36-41.  He alleged that "Aurora instructed its agent, the

original nominal lender Pacific Community Mortgage, Inc., to divide the loan into two parts" "to

avoid the California anti-deficiency laws and to deny [him] a proper TILA disclosure statement that

---

[13] Mr. Jara actually alleged that Aurora's "deceptive," rather than "fraudulent," business practices violated the UCL, but the court assumed that he meant to allege a violation of the "fraudulent" prong.  *See* TAC, ECF No. 49, ¶ 43.  Moreover, to the extent that Mr. Jara also attempted to allege a violation of the "unlawful" prong of the UCL, such an attempt failed because he failed to sufficiently allege a viable predicate claim.

1 accurately defined the financial terms of the entire obligation." TAC, ECF No. 49 at ¶ 37. Mr. Jara

2 suggested that Aurora denies his allegations, creating "[a]n actual controversy . . . regarding whether

3 the loan was structured illegally." TAC, ECF No. 49 at ¶¶ 37, 38.[14]

4    The court dismissed Mr. Jara's claim because his allegations were vague and unsupported. The

5 court explained:

> For one, Mr. Jara implies that there is something nefarious about dividing a mortgage
> 6  into two loans, but he cites nothing that suggests why this is true. His claim is also
> vague, as he alleges that Aurora wanted to avoid "California's anti-deficiency laws,"
> 7  but he does not make clear which one(s) Aurora wanted to avoid or how it allegedly
> did so. And to the extent that his claim is based on a TILA violation, he has failed to
> 8  sufficiently allege one, as explained above. Accordingly, his claim fails and is
> dismissed without prejudice.
> 9

10 12/14/2011 Order, ECF No. 68 at 19-20 (footnote omitted). With respect to the lack of clarity about

11 which statutes were violated and how, the court wrote:

> In the "General Allegations" section of his Third Amended Complaint, Mr. Jara
> 12  alleges that "[t]he $850,000.00 obligation was packaged into two obligations for the
> purpose of evading the California anti-deficiency laws such as [California Code of
> 13  Civil Procedure §§] 580[d] and 726." TAC, ECF No. 49 at ¶ 6. Mr. Jara, however,
> does not make clear how Aurora's alleged acts violated these two statutes.
> 14

15 *Id.* at 19 n.16.

16    Mr. Jara again brought a claim for a declaratory judgment in his Fourth Amended Complaint.

17 Fourth AC, ECF No. 72, ¶¶ 24-29. His allegations in that regard are nearly identical to those in his

18 Third Amended Complaint, *compare* Fourth AC, ECF No. 72, ¶¶ 24-29 *with* TAC, ECF No. 49, ¶¶

19 36-41, although he did provide a few more allegations in the "General Allegations" section of his

20 complaint:

> Dividing the loan in this manner permits the lender to secure the property through a
> 21  non-judicial trustee['s] sale when the 'first' loan is in default and then sue [Mr.] Jara
> for a personal judgment on the 'unsecured' second deed of trust, which became
> 22  'unsecured' only because the lender or its assignee had already seized the property at
> the non-judicial trustee['s] sale. Thus, dividing the loan in this manner frustrates the
> 23  California policy in [California Code of Civil Procedure] § 580[d] that no personal
> judgment be obtained when the lender seized the property using a non-judicial
> 24  trustee['s] sale.
> 25

26 _____

27  [14] The Declaratory Judgment Act gives a district court discretion to exercise its jurisdiction
over a claim for declaratory relief. *See* 28 U.S.C. § 2201. A declaratory relief claim requires a
28 present and actual controversy between the parties. *See Ngoc Nguyen,* 749 F. Supp. 2d at 1035; *Cal.
Ins. Guar. Ass'n v. Superior Court*, 231 Cal. App. 3d 1617, 1623 (1991).

UNITED STATES DISTRICT COURT
For the Northern District of California

1 Fourth AC, ECF No. 72, ¶ 6.

2    It is true that under California law a nonjudicial foreclosure is subject to the antideficiency

3 statutes, so a foreclosing lender cannot obtain a judgment for any difference between the debt and

4 the proceeds from the foreclosure sale that took place:

5        No judgment shall be rendered for any deficiency upon a note secured by a deed of
         trust or mortgage upon real property or an estate for years therein hereafter executed
6        in any case in which the real property or estate for years therein has been sold by the
         mortgagee or trustee under power of sale contained in the mortgage or deed of trust.
7

8 Cal. Civ. Proc. Code § 580d. But Mr. Jara's claim is still deficient. Like he did in his Third

9 Amended Complaint, he again implies that there is something nefarious about dividing a mortgage

10 into two loans, but he again provides only speculation why this would be true. Moreover, he still

11 does not allege how dividing a mortgage loan into two loans violates § 580d; § 580d, after all, says

12 nothing about that.

13    In addition, Mr. Jara's allegation that Aurora divided the loan into two is belied by the relevant

14 documents, which identify Pacific as the lender and First Priority Financial, Inc. as the mortgage

15 broker. RJN, ECF No. 62, Exs. 1 (adjustable rate note for $648,750 identifying Pacific as lender), 2

16 (note for $216,250 identifying Pacific as lender), 3 (deed of trust identifying Pacific as lender), 5

17 (fee disclosure identifying First Priority Financial, Inc. as mortgage broker). In light of these

18 documents, Mr. Jara's allegations that Aurora was responsible for the structure of the loans does not

19 "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

20    Because Mr. Jara has had multiple attempts to sufficiently allege a claim for a declaratory

21 judgment with respect to his split-the-loans theory but has yet to do so, his claim is DISMISSED

22 WITH PREJUDICE. *See Ferdik*, 963 F.2d at 1261.

23                              **V. CONCLUSION**

24    Based on the foregoing, the court GRANTS Defendants' motion to dismiss Mr. Jara's Fourth

25 Amended Complaint. All of his claims are DISMISSED WITH PREJUDICE.

26    **IT IS SO ORDERED.**

27 Dated: March 30, 2012

28                              _____
                               LAUREL BEELER
                               United States Magistrate Judge

C 11-00419

15

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**